UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSIE BALDWIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,<br><br>　　　　Defendant. | Case No. ED CV 09-513-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her application for Disability Insurance benefits ("DIB"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred when he: 1) failed to find that Plaintiff's fibromyalgia was a severe impairment at step two of the sequential disability analysis; and 2) rejected a treating doctor's opinion that she could not work. (Joint Stip. at 3-4, 8-10.) Because the Agency's decision that Plaintiff was not disabled is supported by substantial evidence, it is affirmed.

## II. SUMMARY OF PROCEEDINGS

Plaintiff applied for DIB on March 27, 2006, alleging that she had been unable to work since February 19, 2005, because of fibromyalgia and, more specifically, "increasing stiffness and headaches, hand coordination, trouble sleeping, constant muscle pain and trouble with memory." (Administrative Record ("AR") 25, 51, 72.) The Agency denied the application initially and on reconsideration. (AR 23-30.) Plaintiff then requested and was granted a hearing before an ALJ. (AR 33, 46-50.) Plaintiff appeared with counsel and testified at the hearing on September 12, 2008. (AR 287-315.) On November 13, 2008, the ALJ issued a decision denying benefits. (AR 12-21.) Plaintiff appealed to the Appeals Council, which denied review. (AR 5-8, 285.) She then commenced the instant action.

## III. DISCUSSION

1. <u>The ALJ's Failure to Consider Plaintiff's Fibromyalgia at Step Two Was Harmless Error</u>

In her first claim of error, Plaintiff contends that the ALJ erred in failing to properly consider her fibromyalgia at step two. Plaintiff argues that the medical record, including a longitudinal history of diagnosis and treatment, demonstrates that she suffers from severe fibromyalgia. (Joint Stip. at 3-4.) For the following reasons, the Court concludes that, even assuming that the ALJ erred in failing to find that Plaintiff's fibromyalgia was a severe impairment at step two, any error was harmless.

At step two of the sequential evaluation process, the ALJ is tasked with identifying a claimant's "severe" impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that significantly limits an individual's physical or mental ability to do basic work

activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1521(a). The governing regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Under Social Security Ruling ("SSR") 85-28, a "determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities[.]" A claimant's subjective symptoms must be considered in this evaluation. *Smolen*, 80 F.3d at 1290. The step-two inquiry is intended to be a "de minimis screening device." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

The ALJ found at step two that Plaintiff's shoulder girdle myositis with tension headache, hypertension, obesity, and depressive disorder, not otherwise specified, were severe impairments. (AR 14.) It is not clear why the ALJ did not include her fibromyalgia, given that he noted that, "[u]pon application, [Plaintiff] cited fibromyalgia as the sole condition preventing her from sustaining substantial gainful activity[,]" and that Plaintiff complained that this condition caused her constant pain and cramping in her legs, back, and chest, difficulty reaching and bending, knots in her back, and pain in her chest. (AR 16.) The ALJ also accepted that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (AR 17.) Because those symptoms included the symptoms caused by fibromyalgia, (AR 16-17), the ALJ's decision implies that he found that fibromyalgia was a medically determinable impairment. (AR 17.) Further, because the symptoms that Plaintiff complained of, if believed, had a more than minimal effect

on her ability to do basic work activities, the ALJ should have found that her fibromyalgia was a severe impairment.[1]

Nevertheless, assuming that the ALJ erred at step two, any error was harmless because the ALJ accounted for the symptoms and limitations allegedly caused by her fibromyalgia in his residual functional capacity determination at step four. After concluding that Plaintiff's severe impairments, singly or in combination, did not meet or equal a Listed Impairment, the ALJ determined that Plaintiff had the residual functional capacity to do light work.[2] (AR 14-16.) In making this determination, the ALJ expressly considered the symptoms Plaintiff attributed in whole or in part to her fibromyalgia, including her complaints of constant pain and cramping in her legs, back, and chest; difficulty reaching and bending; stiffness; headaches; hand coordination; trouble sleeping; nausea; dizziness; and exhaustion. (AR 16.) The ALJ concluded that her medically-determinable impairments could reasonably be expected to produce the alleged symptoms, but discounted Plaintiff's testimony to the extent

---

[1] Additionally, the ALJ noted that Plaintiff's treating physician diagnosed her with fibromyalgia, and that her rheumatologist found 12 out of 18 positive tender points. (AR 17.) On the other hand, the ALJ noted that the treating physician alternatively diagnosed chronic fatigue syndrome, and that her rheumatologist did not make the "requisite trigger point identification" or rule out other potential sources of discomfort. (AR 17.) It seems that the ALJ was unwilling to fully embrace the fibromyalgia diagnosis. Nevertheless, as discussed in the text, the ALJ went on to consider the symptoms and limitations allegedly arising from Plaintiff's fibromyalgia.

[2] The ALJ also found that Plaintiff would be limited to "moderately complex work with three to four steps," involving no more than "occasional non-intense contact with others," and would be precluded from fast-paced work. (AR 16.) Plaintiff has not challenged those findings here.

that her description of the intensity and scope of her symptoms was inconsistent with his residual functional capacity assessment. (AR 17.) He did so, in part, based on the opinions of the state agency reviewing doctors, who found that Plaintiff could do medium-level work, and on the opinion of consultative neurologist Dr. Woodward, who examined Plaintiff and concluded that her neurological status did not significantly limit her physical abilities. (AR 17.) Dr. Woodward opined that Plaintiff's gait was normal and that her extremities seemed to be in the "normal range with respect to muscular power and coordination," concluding that "it is likely that depression and anxiety are contributing to much of [her] symptomatology" and that she was not significantly limited with respect to her physical activities as a result of her "neurologic status." (AR 283-84.)

Because the ALJ considered the limitations arising from Plaintiff's fibromyalgia at step four, any failure on his part to find that fibromyalgia was a severe impairment at step two was harmless error. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that ALJ's error in finding an impairment non-severe at step two was harmless when ALJ considered limitations resulting from impairment at step four) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054-55 (9th Cir. 2006)); *see also Cotton v. Astrue*, 2010 WL 1258262, at *2 (9th Cir. Apr. 2, 2010) (finding that any error by the ALJ in failing to include fibromyalgia as a severe impairment was harmless where the ALJ concluded that the claimant should be limited to light work due to the possibility that she might have fibromyalgia). For these reasons, this claim does not warrant reversal or remand.

### 2. The Treating Doctor's Opinion

In her second claim of error, Plaintiff contends that the ALJ erred by failing to provide legitimate reasons for rejecting an April 18, 2007 opinion of Dr. Mariclem Lao, Plaintiff's primary treating physician. (Joint Stip. at 8-10.) For the following reasons, this claim does not warrant remand.

In general, a treating doctor's opinion is entitled to deference. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). This rule does not apply to a treating doctor's opinion regarding the ultimate issue of disability, however. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that treating physician's opinion is "not binding on an ALJ with respect to the . . . ultimate determination of disability."); 20 C.F.R. § 404.1527(e)(3); *see also* SSR 96-5p (stating that opinion that claimant is disabled, "even when offered by a treating source, can never be entitled to controlling weight or given special significance").

In his decision, the ALJ noted Dr. Lao's opinion, but gave it little weight because she "apparently relied quite heavily on the subjective report of symptoms and limitations provided by" Plaintiff, which the ALJ had found to be unreliable. (AR 18.) Additionally, the ALJ gave "minimal weight" to Dr. Lao's opinion that Plaintiff's inability to tolerate sustained activities and poor concentration would prevent her from engaging in meaningful employment because Dr. Lao was not a mental health specialist and her opinion was not based on clinical evidence, but on Plaintiff's subjective complaints. (AR 19.) Instead, the ALJ gave greater weight to the opinions of the consultative neurologist and the state agency reviewing psychiatrists. (AR 19.) The ALJ also rejected Dr. Lao's opinion on the ground that

6

it was conclusory and supported by "very little explanation of the evidence relied on in forming that opinion." (AR 18.)

These are all legitimate reasons for discounting a treating physician's opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible.") (quotation omitted); *Smolen*, 80 F.3d at 1285 ("[T]he opinions of a specialist are given more weight than the opinions of a nonspecialist."); *Batson*, 359 F.3d at 1195 (holding treating doctor's opinion that claimant is disabled is not binding on the Agency; further, an opinion that is "conclusory, brief, and unsupported by the record as a whole, or by objective medical findings" is entitled to "minimal evidentiary weight.").

Further, they are supported by substantial evidence in the record. As to Dr. Lao's opinion that Plaintiff was physically incapable of working, the opinion is conclusory and based in large measure on Plaintiff's claims relating to her symptoms. (AR 226, 227, 231-35, 281.) There is very little objective evidence to support Plaintiff's claimed ailments and the ALJ found that Plaintiff was not credible, a finding she does not challenge here. Thus, the ALJ's reasons for rejecting these findings is supported by the record.[3]

---

[3] The Court acknowledges that there are "unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia," meaning that objective evidence is relatively less helpful in determining a claimant's limitations. *See Rogers v. Comm'r, Soc. Sec. Admin.*, 486 F.3d 234, 245 (6th Cir. 2007); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (reversing where "ALJ effectively required 'objective' evidence for a disease [i.e., fibromyalgia] that eludes such measurement."); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that fibromyalgia symptoms are "entirely subjective"). The ALJ did not improperly

As to Plaintiff's mental capacity, examining clinical psychologist Dr. Kim Goldman and the state agency reviewing psychiatrists all concluded that Plaintiff would have no more than moderate difficulties in concentration, persistence, and pace. (AR 183, 192, 195.) Because these individuals are experts in that field, their opinions are entitled to more weight that Dr. Lao's.[4]

## IV. CONCLUSION

For the foregoing reasons, the Agency's decision is affirmed and the case is dismissed with prejudice.

IT IS SO ORDERED.

DATED: May 10, 2010.

_Patrick J. Walsh_
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\Baldwin\Memo_Opinion.wpd

---

require objective evidence of Plaintiff's limitations here, however. Rather, he noted that Dr. Lao's opinion was largely based on Plaintiff's own account, and found, in turn, that her account was not credible for various reasons.

[4] It is not clear why the ALJ concluded that Dr. Lao's "opinion regarding a neurological impairment is given less weight than the Board certified neurologist, Dr. Woodward." (AR 18.) Dr. Lao did not appear to offer an opinion regarding a neurological impairment in her April 18, 2007 letter. Nevertheless, in light of the ALJ's other reasons for rejecting Dr. Lao's opinion, any error committed in this regard was "inconsequential to the ultimate nondisability decision," and, therefore, harmless. *Stout,* 454 F.3d at 1055.